# HERRICK

NEW YORK
NEWARK
PRINCETON
WASHINGTON, D.C.
ISTANBUL

WILLIAM R. FRIED
PARTNER
Direct Tel:   212.592.1684
Direct Fax:  212.545.3469
Email:   wfried@herrick.com

November 19, 2015

**VIA ECF FILING**

Honorable P. Kevin Castel
United State District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

        RE:  *Dominick & Dominick LLC v. Deutsche Oel & Gas AG*,
              No. 14 Civ. 6445 (PKC)-Request for Permission to File Motion for
              Summary Judgment

Dear Judge Castel:

      Our firm represents Plaintiff Dominick & Dominick, LLC ("D&D") in this action. We submit this pre-motion letter pursuant to Rule 4.A.1 of Your Honor's Individual Rules of Practice to request the Court's permission to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## I. Introduction

      As Your Honor is aware, the above captioned matter is an action for the payment of fees owed to Plaintiff by Defendant Deutsche Oel & Gas, AG ("DOGAG"), pursuant to an Exclusive Agency Agreement (the "Agreement") in connection with a debt funding transaction unilaterally procured by Defendant to fund the operations of its United States subsidiary, Furie Operating Alaska, LLC ("Furie"). Despite this exclusive agency agreement, DOGAG simply has refused to pay D&D.[1]

      Briefly, in September 2013, Defendant engaged Plaintiff as its exclusive broker in the United States to obtain funding (whether debt or equity) for the operation and development of the Kitchen Lights Unit (the "KLU"), a region in Cook Inlet, Alaska, where its U.S based subsidiary, Furie, seeks to drill for oil and gas. The parties agreed to a target list of potential investors, identifying Energy Capital Partners ("ECP") as one of them, at the inception of their relationship. During the contract period, Plaintiff obtained terms sheets from at least two institutional investors. Defendant, however, unilaterally transacted with ECP to the exclusion of Plaintiff, nonetheless triggering the obligation to pay Plaintiff under the Agreement. Indeed,

---

[1] Plaintiff refers to its First Amended Complaint, with annexed exhibits, for additional details (Dkt. Nos. 6-8).

Honorable P. Kevin Castel
November 19, 2015
Page 2

DOGAG obtained a $160 million capital commitment from ECP (a U.S. source), and has refused to pay Plaintiff anything. Additionally, the transaction between ECP and Defendant rendered it effectively impossible for Plaintiff to have obtained any funding for DOGAG as envisioned by the Agreement due to DOGAG's pledge of all of its assets and debt to ECP.

## II.   Plaintiff's Previous Request for Permission to File for Summary Judgment

This is the second pre-motion letter filed by Plaintiff seeking permission to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56. By letter dated June 10, 2015, Plaintiff sought permission to file a motion for summary judgment prior to the close of fact discovery (Dkt. No. 19). Defendant objected to Plaintiffs' application (Dkt. No. 20), and argued that: (1) Plaintiff's request was premature given the limited discovery exchanged to date (id. at 2-3); (2) Plaintiff failed to prove its own performance of the Agreement, on the one hand, and Defendant's non-performance of the Agreement, on the other hand (id. at 3); and (3) Plaintiff cannot demand payment because the Agreement purportedly applies only to a debt funding transaction in which Defendant (as opposed to any of its subsidiaries) acts as direct debtor and loan fund recipient, which did not happen here (id. at 4-5).

The Court denied Plaintiff's application without prejudice to renew after the close of fact discovery. (Dkt. No. 21). Document productions and party depositions are now complete. Pursuant to the Court's Order, Plaintiff renews its request for permission to file its motion for summary judgment. Plaintiff incorporates by reference its original submission to the Court (Dkt. No. 19), and further states that (1) it is entitled to summary judgment under the terms of the Agreement; and (2) in the alternative, it is entitled to equitable relief.

## III.   Plaintiff is Entitled to Summary Judgment on Its Breach of Contract Claim

The essential elements of a cause of action to recover damages for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of its contractual obligations, and (4) damages resulting from the breach. PFM Packaging Machinery Corp. v. ZMY Food Packing, Inc., 131 A.D.3d 1029, 16 N.Y.S. 3d 298, 299-300 (App. Div., 2d Dep't 2015).

First, the parties do not dispute that they entered into a legally enforceable Agreement pursuant to which D&D was to act as DOGAG's exclusive funding agent in the United States. Significantly, DOGAG has also conceded that the purpose of the Agreement was to obtain funding for the development and operation of the KLU. (See Ex. A; Dep. Tr. of Lars Degenhardt dated Oct. 13, 2015 ("Degenhardt Tr.") 11:8-12:9, 34:2-35:20, an excerpt of which is appended hereto as Exhibit B).

Honorable P. Kevin Castel
November 19, 2015
Page 3

Second, there also can be no dispute that Plaintiff performed. As an initial matter, this Court already ruled that Defendant is not permitted to argue affirmative defenses, including but not limited to, its proposed third affirmative defense (i.e. that Plaintiff failed to perform). (Compare Dkt. No. 25-1 at 9 with Dkt. No. 27).[2] Additionally, the evidence adduced during discovery demonstrates that Plaintiff fully performed under the contract. By way of example only, Plaintiff procured for DOGAG at least two term sheets for funding the KLU operation and development. (Exs. C and D). DOGAG's own CFO, Lars Degenhardt, testified that at least one of the term sheets was particularly attractive and well-received, and there was no reason of which he was aware why Defendant should not have sought to consummate the deal. (Degenhart Tr. 78:20-79:2; 82:19-83:10).[3] Indeed, if Plaintiff did nothing, as Defendant now apparently contends, why did Defendant not terminate the contract until after D&D sent to DOGAG an invoice for the ECP transaction?

Finally, there can be no material dispute that Defendant breached its obligation to pay Plaintiff after United States funding was obtained. The Agreement obligates Defendant to pay Plaintiff a fee if Defendant obtains funding from a United States source during the term of the Agreement. (Ex. A at ¶¶ 1, 3). Plaintiff explicitly identified ECP as a potential target for funding. (Ex. G at Target List, p. 3). ECP (a United States source) provided funding for the development and operation of the KLU through a transaction that closed on or about June 24, 2014 (Ex. H)). And to date, Defendant has failed to pay Plaintiff and instead disputes the fee. (Degenhardt Tr. 120:6-12).

Defendant intimated -- for the first time in its letter to the Court dated June 15, 2015, filed in response to Plaintiff's previous request to file for summary judgment -- that it would seek to prove that it was not in breach of the Agreement because Defendant's subsidiary, Furie, was the direct recipient of loan proceeds, not Defendant. (Dkt. No. 20 at 4-5). However, Plaintiff will demonstrate on summary judgment that Defendant's eleventh hour argument is without merit both procedurally and under the law.

As stated, the Court has already ruled that Defendant cannot now seek to raise and argue any affirmative defenses given the void in its Answer filed nearly a year ago. (Dkt. Nos.

---

[2] Defendant failed to plead a single affirmative defense in this action. Defendant initially took the position (and in fact told the Court during the initial case management conference) that, because of a "carve-out" in the Agreement, it only had to pay half of the fee claimed. (See Dkt. No. 19). But after initial discovery revealed that ECP was not in any way related to the "carve-out" entities, Defendant turned tail and now apparently seeks to claim some deficiency with the contract itself or with Plaintiff's performance in order to get out of paying a fee altogether. (See Dkt. Nos. 19 & 20). No such deficiencies exist. And even if they did, Defendant has been barred from raising any affirmative defenses at this late date. (Dkt. No. 27). To be clear, the Court determined that Defendant was barred from asserting any affirmative defenses in this matter whatsoever. (Id.)

[3] The reason is plain. Defendant was surreptitiously negotiating a deal with ECP when it was supposed to be meeting with the investors Plaintiff brought to the table for Defendant. (See Exs. E and F).

Honorable P. Kevin Castel
November 19, 2015
Page 4

16 & 27). In addition, the Agreement, Defendant's operations, and the parties' dealings, all demonstrate that Plaintiff is entitled by contract to a fee for the ECP transaction. The Agreement (Ex. A) provides as follows:

> **3. Fees** . . . (b) Funding Fee: Dominick shall be entitled to receive and [Defendant] shall pay to Dominick a fee calculated as a percentage of each Funding ("Funding Fee").
>
> . . . (b)(i) DEBT: For any Funding based on debt *which is not convertible into or linked to DOGAG's equity*, Dominick shall be entitled to receive a cash fee equal to Two Percent (2.00%) of the gross proceeds of the first One Hundred Million Dollars ($100,000,000) of such Funding and One and One Half Percent (1.50%) of the gross proceeds for any amount of such Funding over One Hundred Million Dollars ($100,000,000), provided however that *Dominick shall reduce the fee to which it may otherwise be entitled under this paragraph 3.(b)(i) by Fifty Percent (50%) for any Funding which is contributed by any entity listed at Schedule 1 of this Agreement, which may be amended by mutual agreement from time to time.*
>
> **5. Term**. . . . *During the Term, Dominick shall be [Defendant's] exclusive advisor on all Funding transactions in the United States. . .*

*First*, none of the foregoing limits a debt transaction to a transaction consisting of Defendant (as opposed to one of its subsidiaries) as debtor or issuer. Instead, the Agreement incorporates by reference the Schedule 1 entities and negotiations (Ex. I), all of which firms were in current negotiations with **Furie as debtor or issuer**, or with some other DOGAG family company with the intention of obtaining funding **on behalf of Furie's KLU operations** (Degenhardt Dep. at 41:2-22), and their inclusion in this Agreement renders it indisputable that the Agreement contemplates a funding transaction to support the Furie operations in the KLU, regardless of deal structure.[4] *Second*, Defendant was a direct party to the ECP funding transaction, and in fact was required to pledge the assets of itself as well as its subsidiaries in order to obtain the funding and cannot now claim it is without party status or interest. (Rieck Dep. at 84:2-16). *Third*, that the transaction could take any one of several forms was part and parcel of the parties' understanding, the inclusion of Schedule 1 in the Agreement, the dealings between the parties, and Plaintiff's negotiations undertaken for the benefit of Defendant here.

---

[4] Nor could the Agreement be construed differently. Defendant has admitted that DOGAG is a mere holding company which raises funds for use by its subsidiary companies in the United States. (See Degenhardt Tr. at 9:7-15; Dep. Tr. of Kay Rieck dated Oct. 9, 2015 ("Rieck Tr.") 13:14-23, an excerpt of which is appended hereto as Exhibit J).

(See e.g., Ex. K (explaining that Defendant contemplated that Plaintiff would procure a debt raise with its subsidiary Cornucopia Oil and Gas Company, LLC, as issuer, and Defendant as guarantor); Ex. C (original Campo terms sheet contemplating loan to Defendant); Ex. D (original Freepoint terms sheet considering issuer as Cornucopia); Ex. L (later Campo correspondence contemplating funding to Furie); Ex. M (email correspondence envisioning that Plaintiff will secure a "DOGAG/FURIE ALASKA deal)).  For these, as well as other reasons to be addressed on summary judgment, Defendant's attempt to insert a late-manufactured affirmative defense should fail.

### IV. Plaintiff is Entitled to Summary Judgment on Its Claim for Breach of the Covenant of Good Faith and Fair Dealing

In addition to the express terms of a contract, New York law implies in every contract a covenant of good faith and fair dealing pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 188 N.E. 163, 167 (N.Y. 1933).  This covenant includes an implied undertaking on the part of each party that he will not "intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." Grad v. Roberts, 14 N.Y. 2d 70, 75, 198 N.E.2d 26, 28, 248 N.Y.S.2d 633, 637 (N.Y. 1964).

There can be no material dispute that Defendant refused to work with Plaintiff in good faith in order to consummate a funding transaction negotiated by Plaintiff.  Moreover, Defendant has **admitted** that the ECP transaction materially altered (and likely precluded) the ability of Plaintiff to close a separate deal through D&D.  To be clear, Mr. Rieck, the CEO and majority owner of Defendant, testified the ECP transaction required Defendant, and Cornucopia, and Furie, to pledge all of their assets, leaving no assets left to pledge for any other funding transaction at that time (Rieck Tr. 84:4-16), thus making it unreasonably difficult, if not impossible, for Plaintiff to otherwise perform and receive the fruits of the contract.

For all of these reasons, Plaintiff respectfully requests that the Court allow it to fully brief a motion for summary judgment on the foregoing claims.

Per Your Honor's Rule, Plaintiff proposes the following briefing schedule for Plaintiff's motion for summary judgment:

> Deadline for Plaintiff's Motion:  Friday, January 15, 2016
> Deadline for Opposition:  Friday, February 12, 2016
> Deadline for Reply:  Wednesday, March 2, 2016

We thank the Court for its attention to this matter.

Honorable P. Kevin Castel
November 19, 2015
Page 6

                                            Respectfully submitted,

                                            /s/ William R. Fried

                                            William R. Fried

Encls.

cc:     Gil Feder, Esq. (via ECF)
        Nicole Lapsatis, Esq. (via ECF)