UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DOMINICK & DOMINICK LLC,

                            Plaintiff,                            14-cv-06445 (PKC)

        -against-                                  MEMORANDUM
                                                                   AND ORDER

DEUTSCHE OEL & GAS AG,

                            Defendant.
-----------------------------------------------------------x

CASTEL, Senior District Judge:

        Dominick & Dominick LLC, now known as Dominick & Dickerman, LLC, ("Dominick") brings this action against Deutsche Oel & Gas AG ("Deutsche") for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. Dominick, a financial services institution, entered into an agreement with Deutsche, a German energy company, to provide Deutsche with assistance in acquiring funding for an energy development project in Alaska (the "Agreement"). Dominick alleges primarily that Deutsche breached the terms of the Agreement when it failed to pay Dominick a $2.9 million dollar fee after Deutsche closed a funding deal with a third-party investor, Energy Capital Partners ("ECP"). The Court denied Dominick's motion for summary judgment on its breach of contract and good faith and fair dealing claims (Memorandum and Order, August 15, 2016 (the "Memorandum and Order")). (Dkt. 56.)

        Deutsche now moves for summary judgment on all of Dominick's claims pursuant to Rule 56, Fed. R. Civ. P. For reasons to be explained, Deutsche's motion for summary judgment is granted.

BACKGROUND

The following facts are undisputed except where otherwise noted. All reasonable inferences are drawn in favor of Dominick, as the non-movant. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

At all times relevant to this action, Deutsche was a German holding company based in Stuttgart, Germany. (Plaintiff's Counterstatement of Material Facts ("Pl. 56.1") ¶ 3.) Through its wholly-owned subsidiaries Cornucopia Oil and Gas Company, LLC ("Cornucopia") and Furie Operating Alaska, LLC ("Furie"), Deutsche engaged in the development of oil and gas resources in Cook Inlet, Alaska. (Pl. 56.1 ¶¶ 6, 8-9.) In or around November 2013, Furie obtained permits to construct an offshore production facility in Cook Inlet, which gave Furie the opportunity to commence operation of a new natural gas field. (Pl. 56.1 ¶ 12.) Deutsche and its subsidiaries sought to raise substantial capital through outside investors in order to advance this new project. (Pl. 56.1 ¶ 4j.)

On October 1, 2013, Deutsche formally engaged Dominick, a New York-based financial services institution, to assist Deutsche in procuring that funding (the "Agreement"). (Pl. 56.1 ¶¶ 1, 4, 13, 15.) The written Agreement between Deutsche and Dominick provided that Dominick would be Deutsche's "exclusive advisor on all Funding transactions in the United States." (Declaration of William R. Fried (the "Fried Decl.") Ex. 11, Clause 5.) Dominick agreed to:

> [U]se its commercially reasonable efforts to assist [Deutsche] to:
> (a) secure up to Three Hundred Twenty Five Million Dollars
> ($325,000,000) in primarily debt-based funding (and/or eventually
> equity-based funding) upon terms acceptable to [Deutsche]
> ("Funding(s)"); and, (b) undertake such other activities as the
> parties may from time-to-time mutually agree and determine
> ("Financial Services"). Dominick shall provide such Financial

> Services to [Deutsche] in such form, manner and place as [Deutsche] may reasonably request.

(Fried Decl. Ex. 11, Clause 1.) In exchange, Dominick received an "Initial Advisory Fee" of $15,000, which was for preliminary work including "completing requisite due diligence review of [Deutsche] and its operations, [and] developing a valuation model," as well as "otherwise positioning [Deutsche] for Funding activities." (Fried Decl. Ex. 11, Clause 3.) The Agreement also entitled Dominick to other "Funding Fee[s]," i.e. commissions, calculated as a certain percentage of each "Funding" closed. (Fried Decl. Ex. 11, Clause 3.)

The Agreement provides that New York law governs the contract, "without giving effect to its conflicts of law principles." (Fried Decl. Ex. 11, Clause 12.)

By the middle of 2014, Dominick procured term sheets for Deutsche on two possible funding transactions with two different investors: The Campo Group ("Campo") and Freepoint Commodities LLC ("Freepoint"). (Dkt. 46 ¶¶ 44, 52.) For a variety of reasons, neither the Campo nor Freepoint deals ever closed.

During the same time period, approximately June to July 2014, Deutsche and its subsidiaries negotiated and finalized a funding deal with ECP for $160 million. (Fried Decl. Ex. 28.) The deal provided operational funding directly to Furie, but required Deutsche and its other affiliates to fully guarantee the transaction. (Fried Decl. Ex. 26.) On July 15, 2014, after ECP publically announced the deal (Fried Decl. Ex. 28), Dominick requested a draft copy of the ECP term sheet to present to Campo, who, according to Dominick, remained a potential investor, (Declaration of Gil Feder (the "Feder Decl.") Ex. P.) Deutsche did not provide Dominick with the ECP term sheet. About ten days later on July 24, 2014, Dominick sent Deutsche another email requesting a copy of the ECP agreement, but this time Dominick attached an invoice for a $2.9 million fee arising out of the ECP transaction. (Feder Decl. Ex. R.) Shortly after receiving

that invoice, Deutsche terminated the Agreement with Dominick and explicitly disputed Dominick's entitlement to any "Funding Fee" from the ECP deal. (Feder Decl. Ex. S.)

PROCEDURAL HISTORY

As will be seen, Dominick in its opposition to summary judgment has endeavored to assert new claims of breach of contract and breach of the covenant of good faith and fair dealing that are not alleged in its amended complaint. Dominick has attempted to raise these new theories after the date for amendments to the pleadings, after the close of discovery and after the Court's decision denying Dominick's motion for summary judgment. Accordingly, the procedural history bears some relevance to the disposition of the present motion. The action was filed on August 13, 2014 and Dominick amended its complaint on September 3, 2014. (Dkt. 6.) At an initial conference, the Court gave the parties 30 days for further amendments of the pleadings, i.e. until February 4, 2015, and set the close of discovery for July 10, 2015. (Dkt. 17.) Thereafter the Court extended discovery to September 30, 2015. (Dkt. 24.)

Shortly before the close of discovery and beyond the period set for any amendments to the pleadings, Deutsche sought to amend its answer. (Dkt. 25.) Dominick opposed the application arguing that Deutsche failed to meet the 30-day deadline of February 4, 2015, should have known the facts upon which the amendments were based at an earlier juncture, the timing of the request "supports a finding of bad faith," and that it would be "highly prejudicial" to Dominick to allow Deutsche to raise new defenses with so little time left in the discovery period. (Dkt. 26.) The Court denied Deutsche's application writing, in part, that "[g]iven the date set in the Scheduling Order for motions to amend a pleading and the absence of good cause, leave to amend the answer is DENIED." (Dkt. 27 (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).)

Thereafter, Dominick moved for summary judgment on its claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (Dkt. 40.) The Court concluded that under New York law, a contract granting an exclusive right to a broker or agent to secure a transaction for the principal must clearly and expressly provide that payment is due the broker or agent even when a sale is independently secured by the principal, and that the Agreement contained no such provision. (Memorandum and Order at 10-11.) Dominick would nevertheless be entitled to a commission on the ECP deal if it had been the procuring cause of that deal. (Id. at 14-15.) But, in the context of Dominick's motion, the Court concluded that Dominick was not the procuring cause. (Id.) In addition, the Court found that none of Deutsche's actions violated the covenant of good faith and fair dealing. (Id. at 15-20.)

Deutsche now moves for summary judgment on Dominick's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (Dkt. 61.) In response, Dominick argues that it has additional theories of wrongdoing that it should be permitted to put to a jury, including that Deutsche breached the Agreement by having Cornucopia hire a competing broker and that Deutsche breached the covenant of good faith and fair dealing by promising, as part of the ECP deal, not to seek the kind of equity and debt financing Dominick had been hired to procure. These are factual assertions not found in Dominick's Amended Complaint nor argued in opposition to Deutsche's summary judgment motion.

DISCUSSION

    I.    <u>Legal Standard.</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts demonstrating that the non-moving party's claim cannot be sustained, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal quotation marks omitted). In raising a triable issue of fact, the non-movant carries only a "limited burden of production," but nevertheless "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted). In reviewing a motion for summary judgment, the Court "need consider only the cited materials, but it may consider other materials in the record." Rule 56(c). In the absence of any disputed material fact, summary judgment is appropriate.

II. Breach of Contract.

   a. *Breach of Contract: Failure to Pay Funding Fee.*

In the complaint, Dominick claims that Deutsche owes it a $2.9 million "Funding Fee" arising out of the $160 million financing deal Deutsche closed with ECP during the term of the Agreement. Because Deutsche has not paid Dominick that fee, Dominick contends Deutsche is in breach of the Agreement. In the Court's prior summary judgment decision, the Court concluded that Deutsche did not breach the Agreement as a matter of law by failing to pay Dominick the $2.9 million fee because the Agreement established only an exclusive agency relationship and, on the facts presented, no reasonable juror could find that Dominick had procured the ECP deal. (Memorandum and Order at 9-15.) Deutsche asserts the Court's prior Memorandum and Order are the law of the case.

"[L]aw of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation." Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999). "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). However, even when the law of the case doctrine applies, it "directs a court's discretion, it does not limit the tribunal's power." Id. Rulings of a district court remain subject to revision "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b), Fed R. Civ. P. "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DiLaura v. Power Auth. of N.Y., 982 F.2d 73, 76 (2d Cir. 1992) (quotations and citations omitted).

While the Court has the discretion to reconsider its prior legal rulings in the Memorandum and Order, no principled reason for doing so has been tendered. This Court's construction of the Agreement remains binding on the parties. But Deutsche endeavors to take the law of the case doctrine further and extended it to the Court's conclusions that there were no genuine issues of fact in dispute on whether Dominick was a procuring cause of the ECP transaction. There is some support for the proposition that a prior judicial conclusion that there was no evidence to support a claim may qualify as a legal ruling for the purposes of the law of the case doctrine. Ovadia v. Top Ten Jewelry Corp., No. 04 Civ. 2690 (RJH) (MHD), 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005). But Rule 56, at least since the 2010 amendments, requires advance notice and opportunity to respond if the Court proposes to grant summary judgment in favor of the non-movant. Rule 56(f). Here, the prior non-movant now proceeds by a separate new motion and the Court declines to hold that the law of the case doctrine forecloses any factual opposition to that second summary judgment motion by the prior movant.

Applying these principles, the Court adheres to its prior legal ruling that the Agreement did not grant Dominick exclusive status and thus Deutsche was free to procure a transaction on its own without incurring liability to Dominick. Separately, and despite argument to the contrary, Dominick has not come forward with evidence which, if believed, would permit a reasonable fact-finder to find that it was the procuring cause of the ECP transaction. Accordingly summary judgment will be granted in favor of Deutsche on Dominick's breach of contract claim.

### b. *Breach of Contract: Hiring Competing Brokers.*

Dominick's complaint alleges that Deutsche refused to pay "the sums called for" under the Agreement thus breaching the Agreement. (Compl. ¶ 76.) Dominick now asserts new

theories of liability that were not included in its complaint nor in its motion for summary judgment. This new theory is that Deutsche breached the Agreement by directing its subsidiary to hire a competing broker, BGR, and by paying a broker's fee to Wildcat.

Discovery in this action closed on November 5, 2015. (Dkt. 31.) In the course of discovery in this action, Dominick learned that effective September 11, 2013, Cornucopia formally engaged BGR Capital & Trade, LLC and BA Securities, LLC (together "BGR") to provide transaction advisory services to Cornucopia and "any of its affiliated entities" (the "BGR Agreement"). (Fried Decl. Ex. 13.) Dominick maintains that Deutsche is an "affiliated entit[y]" such that Cornucopia entered this agreement on behalf of Deutsche as well as itself. (Pl. 56.1 ¶ 4n.) Deutsche disputes this characterization of the BGR Agreement. (Defendant's Reply to Plaintiff's Counterstatement of Material Facts ("Def. Reply 56.1") ¶ 4n.) The contract between Cornucopia and BGR stated that BGR would advise Cornucopia on potential "Financing Transaction[s]" that would provide debt or equity capital for the Cook Inlet project. (Fried Decl. Ex. 13, Clause 1.) Specifically, the BGR Agreement obligated BGR to identify and approach potential investors for the Cook Inlet project, prepare due diligence information for those investors, manage the negotiation process, advise Cornucopia and any of its affiliated entities on financing agreements and assist Cornucopia and any of its affiliated entities in closing a financing transaction. (Fried Decl. Ex. 13, Clause 3.) In exchange, Cornucopia agreed to pay BGR a retainer fee as well as a "Success Fee" on any funding deal signed during the term of the agreement between Cornucopia or any of its affiliated entities and an investor introduced to it by BGR. (Fried Decl. Ex. 13, Clause 4.) The BGR Agreement was signed by BGR representatives and Damon Kade, President of Cornucopia. (Fried Decl. Ex. 13 at 10.) The parties dispute the

extent to which Deutsche and Kay Rieck, Deutsche's CEO, were involved in procuring and approving this agreement. (Compare Pl. 56.1 ¶ 4n, with Def. Reply 56.1 ¶ 4n.)

Several individuals testified that during the fall of 2013, BGR introduced Wildcat Midstream Partners LLC ("Wildcat") to Cornucopia as a potential counterparty for debt or equity financing. (Def. Reply 56.1 ¶ 4u.) It was Wildcat who then brought in ECP, the company with which Deutsche and its subsidiaries ultimately finalized a funding deal. (Pl. 56.1 ¶ 4v.) At some point during negotiations between Deutsche, its subsidiaries, Wildcat and ECP the decision was made not to include Wildcat in the final deal although the parties dispute the circumstances surrounding this decision. (Pl. 56.1 ¶ 4z; Def. Reply 56.1 ¶ 4z.) In a "Mutual Release Letter" dated June 23, 2014, Wildcat, ECP, and "the Furie Parties" (Deutsche, Cornucopia and Furie) agreed to release each other from any prior agreements. (Fried Decl. Ex. 27, Clause 2.) This letter was signed by representatives of Wildcat and ECP and by Kay Rieck on behalf of Deutsche and Damon Kade on behalf of Cornucopia and Furie. (Fried Decl. Ex. 27 at 6.) In addition, Furie agreed to pay Wildcat a fee "as consideration" for "the substantial time, resources and expense by Wildcat in negotiating the transactions contemplated by" earlier letters of intent between ECP, Wildcat, Cornucopia and Furie. (Fried Decl. Ex. 27, Clause 3.) Furie's obligation to pay Wildcat was memorialized in Clause 4.28 of the ECP deal which provides that

> No broker's, finder's or investment banking fee or commissions will be payable by either [Cornucopia or Furie] to any Person with respect to the transactions contemplated by this Agreement . . . except . . . as are required to be paid to the Wildcat Parties pursuant to Section 3 of the Mutual Release Letter . . . .

(Fried Decl. Ex. 29, Clause 4.28 (DOGAG0010617).) The parties disagree as to whether this payment constituted a "break-up" or "walk-away" fee to compensate Wildcat for the time and effort it expended on negotiations of a potential three-way deal between it, ECP and

Furie, or a broker's fee for bringing ECP to the table and brokering the ECP deal. (Compare Pl. 56.1 ¶ 4aa, with Def. Reply 56.1 ¶ 4aa.)

BGR claimed an entitlement to a fee based on the ECP transaction on the theory that BGR introduced Wildcat to Cornucopia, and Wildcat, in turn, introduced ECP to Cornucopia. (Fried Decl. Ex. 12.) Dominick was aware that Cornucopia brought a declaratory judgment suit against BGR and referenced that suit in its prior summary judgment motion, but never claimed that the retention of BGR was a breach of the Agreement.

At no time during the course of this three year-old action has Dominick sought to amend its complaint to assert that the Agreement was breached by the retention of BGR by Cornucopia, whether at the direction of Deutsche or otherwise. While the complaint repeatedly asserts that Dominick was Deutsche's exclusive agent to raise funding, it is explicit in asserting that "Defendant was working outside of the Exclusive Agency Agreement and negotiating <u>on its own behalf</u> with one or more other institutions, including [ECP]. . . ." (Compl. ¶ 38 (emphasis added).)

"It is well established that a party cannot assert a claim for the first time in its motion papers." Mignault v. Ledyard Pub. Sch., 792 F. Supp. 2d 289, 301 (D. Conn. 2011) (quotation marks omitted) (plaintiff waived Fourteenth Amendment claims based on a particular protected property interest raised in opposition to summary judgment where complaint specifically cited a different protected property interest). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (explaining that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment"). As this claim is not present in the complaint and Dominick has

not sought to amend, the Court will not consider Dominick's breach of contract claim based on alleged competing brokers. See Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (summary order) (agreeing with district court that claims raised for the first time in opposition to summary judgment need not be considered); Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006) (District Court did not err in finding claim raised for the first time in opposition to summary judgment untimely); Allah v. Poole, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) (dismissing claims raised for the first time in opposition to summary judgment); Hickey v. State Univ. of New York at Stony Brook Hosp., No. 10 Civ. 1282 (JS) (AKT), 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) (declining to address claims raised for the first time in motion for summary judgment).

Deutsche's motion for summary judgment is granted as to Dominick's breach of contract claims.

### III. Breach of the Covenant of Good Faith and Fair Dealing.

"Under New York law, a covenant of good faith and fair dealing is implied in all contracts." Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (quoting 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002)) (internal quotation marks omitted). "Even if a party is not in breach of its express contractual obligations, it may be in breach of the implied duty of good faith and fair dealing . . . when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denies . . . ." Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc., 97 A.D.3d 781, 784 (2d Dep't 2012) (internal quotation marks omitted). However, the implied covenant "can only impose an obligation consistent with other mutually

agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198–99 (2d Cir. 2005) (internal quotation marks and citations omitted).

In support of its prior summary judgment motion, Dominick argued that Deutsche acted in bad faith when it signed on as guarantor of the ECP deal, encumbering all of its available collateral. Dominick also argued that Deutsche acted in bad faith by failing to disclose that it was negotiating with ECP, by missing meetings with investors procured by Dominick because of the ECP deal, by allowing Dominick to continue rendering services despite having closed the ECP deal, and by promising to pay Dominick a fee but failing to do so. This Court concluded that none of these actions established that Deutsche breached the covenant of good faith and fair dealing. (Memorandum and Order at 15-20.) To the extent the Court's prior ruling turned on an interpretation of the Agreement and the application of New York law, Dominick has not offered any reason to disturb it. Nor has Dominick come forward with any additional evidence establishing a material issue of fact as to any of these claims.

However, Dominick raises a new and different argument not contained in its pleading that Deutsche breached the covenant of good faith and fair dealing by agreeing in the ECP deal not to "solicit, initiate, encourage, facilitate or cooperate with respect to, engage in any discussions or negotiations . . . concerning, enter into any agreement with any person or entity . . . related to, or consummate, any transaction . . . involving any debt or equity financing" for the Cook Inlet project other than "any preferred equity interests of [Deutsche]" or "any exchanges of preferred equity of [Deutsche] for common equity of [Deutsche] . . . ." (Fried Decl. Ex. 26 (DOGAG0011851).) According to Dominick, this provision "eviscerat[ed] Dominick's ability to perform under the Agreement" because Deutsche was effectively promising not to negotiate or

enter into the kinds of financing transactions that Dominick had been hired to procure for the Cook Inlet project. (Plaintiff's Mem. in Opp'n to Mot. for Summ. J. at 7.) Dominick also alleges that Deutsche breached the covenant after executing the ECP deal by encouraging Dominick to expend resources seeking financing deals Deutsche had already promised ECP it would not entertain.

As with Dominick's claim that Deutsche breached the Agreement when Cornucopia engaged BGR, these claims were not included in Dominick's complaint nor in its motion for summary judgment. The time period set by the Court for amendments to the pleadings has passed and discovery in this action is closed. Dominick referenced other terms of the ECP deal in its prior summary judgment motion, but never claimed that Deutsche's promise to ECP regarding future financing transactions violated the covenant of good faith and fair dealing. Nor has Dominick sought to amend its complaint to assert that this particular provision of the ECP deal breached the covenant. Therefore, the Court will not consider Dominick's newly raised good faith and fair dealing claims. See Lyman, 364 F. App'x at 701; Greenidge, 446 F.3d at 361; Allah, 506 F. Supp. 2d at 193; Hickey, 2012 WL 3064170, at *5.

Deutsche's motion for summary judgment on the claim for breach of the implied covenant of good faith and fair dealing is granted.

IV.   Unjust Enrichment.

Finally, Deutsche seeks summary judgment on Dominick's unjust enrichment claims. "In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) (internal

quotation marks omitted). A plaintiff need not establish "the performance of any wrongful act by the one enriched" to prevail provided equity and good conscience requires return of the property. Ptachewich v. Ptachewich, 465 N.Y.S.2d 277 (2d Dep't 1983). However, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark–Fitzpatrick, Inc. v. Long Island R. R. Co., 70 N.Y.2d 382, 388 (1987).

Dominick argues that Deutsche was unjustly enriched by its failure to pay Dominick in connection with the ECP deal and for work done outside of seeking funding for the Cook Inlet project. Specifically, Dominick claims that it advised Deutsche on the ECP deal that Deutsche was pursuing independently. (Pl. 56.1 ¶ 20c.) Dominick also contends that Deutsche was unjustly enriched through its use of Dominick's work product, such as the Freepoint and Campo term sheets, in its own independent negotiations.

There is no dispute that the Agreement is a valid and enforceable contract. That Agreement covered the services Dominick agreed to provide and the compensation Dominick was to receive for those services. (See Fried Decl. Ex. 11, Clauses 1, 3.) Contrary to Dominick's assertion, any work it performed outside of seeking funding for Deutsche was contemplated by the Agreement which states that Dominick will assist Deutsche in securing funding *and* "(b) undertake such other activities as the parties may from time-to-time mutually agree and determine ('Financial Services'). Dominick shall provide such Financial Services to [Deutsche] in such form, manner and place as [Deutsche] may reasonably request." (Fried Decl. Ex. 11, Clause 1.) The Court's prior holding that the Agreement is an exclusive agency contract rather than an exclusive right to sell does not eliminate this promise to do more than just seek to be the procuring source of any funding.

The Agreement also covers the extent to which Dominick will be compensated for the services it promised to perform. According to Clause 3 of the Agreement, Dominick is entitled to an "Initial Advisory Fee" as well as a percentage of any funding that it procures for Deutsche. (Fried Decl. Ex. 11, Clause 3; Memorandum and Order at 14 (holding that Dominick is entitled to a funding fee only for funding it procured).) Because Deutsche and Dominick entered into a valid and enforceable contract and because the subject matter at issue – namely the services Dominick was obligated to provide and the extent to which Dominick would be compensated for those services – is governed by that contract, Dominick's unjust enrichment claims fail.

Finally, Dominick argues that Deutsche was unjustly enriched when it used the Campo and Freepoint term sheets as leverage in its own independent funding negotiations. (Compl. ¶ 88.) This claim is based on deposition testimony from Dominick's Lead Banker, Todd DeMatteo, who stated that based on his experience and the circumstances of the deal, Deutsche was "clearly" using the term sheets procured by Dominick in its negotiations with ECP. (Fried Decl. Ex. 3 at 214:4-25.) This was nothing more than opinion. Absent some evidence supporting DeMatteo's suspicions (after full and fair discovery), this argument is too speculative to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, . . . conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment.") (internal citations omitted); Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (noting that to defeat a motion for summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or

unsubstantiated speculation") (internal quotation mark omitted); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) ("[A] party [may not] rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."). Dominick's suspicion that Deutsche used the Campo and Freepoint term sheets to its advantage is insufficient to create a genuine issue of material fact.

Deutsche's motion for summary judgment on Dominick's claim for unjust enrichment is granted.

CONCLUSION

Deutsche's motion for summary judgment (Dkt. 61) is GRANTED. All pending motions are terminated. The Clerk shall enter final judgment for the defendant and close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
August 24, 2017